# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **WILLIAMS O&G RESOURCES, LLC,** § § § | |
| *Plaintiff,* § | |
| § | |
| v. § | MO:24-CV-00185-DC |
| § | |
| **DIAMONDBACK ENERGY, INC., and DIAMONDBACK E&P LLC,** § § § | |
| *Defendants.* § | |

## ORDER

Before the Court is the report and recommendation of United States Magistrate Judge Ronald C. Griffin[1] concerning Defendants' Diamondback Energy, Inc., and Diamondback E&P LLC's motion to dismiss.[2] In his report and recommendation, Judge Griffin recommends that the Court grant the motion in part and deny it in part.[3] Williams O&G Resources, LLC timely filed objections to the report and recommendation.[4]

A party may serve and file specific, written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure *de novo* review by the district court.[5] A party forfeits arguments raised for the first time in its objections.[6] Because Williams O&G timely objected to a portion of the report and recommendation, the Court reviews that portion of the report and

---

[1] ECF No. 42.
[2] ECF No. 23.
[3] ECF No. 42.
[4] ECF No. 47.
[5] 28 U.S.C. § 636(b)(1)(C).
[6] *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 559 (5th Cir. 2018).

recommendation *de novo*. The remaining portions of the report and recommendation are reviewed for clear error.

As to Counts One and Two,[7] the Court observes that the Magistrate Judge made one small and understandable error—he admitted that Texas caselaw from the 1930s is "not entirely clear"[8] somewhere in the middle of a ten-page passage of careful and thoughtful analysis. Williams O&G hopes in his briefing and objections to drive a battleship's towline through this size eight needle, and (mostly) in the name of novelty.[9]

The Magistrate Judge concluded that Williams O&G brought its claims under the inapplicable Texas Relinquishment Act of 1919 when the land was conveyed from the State in 1948 under the Texas Land Sales Act of 1931. An early Texas Supreme Court opinion wrestled with how these two conveyances Acts should square when the latter Land Sales Act did not repeal the earlier Relinquishment Act.[10] But while the sentence structure and syntax in that opinion are no longer preferred in this age, the Texas Supreme Court's *Wintermann* holding provides no needle hole for novelty to pass through:

> The Relinquishment Act (article 5367 et seq) deals only with oil and gas. Under the provisions of that law the landowner is only authorized to lease the land as the agent of the State for those minerals.
> . . . .
> [The Land Sales Act] and the Relinquishment Act should be construed together. It is plain that the 1931 Act is not intended to repeal the Relinquishment Act; nor does the Relinquishment Act occupy the field covered by this law. This law covers a wider field than the Relinquishment Act. The land sold under the provisions of this act will be governed by the terms thereof, and not by the terms of the Relinquishment Act.

---

[7] The parties agree that Counts One and Two depend on one another with no objection offered in the alternative to treat them separately. *See generally* ECF Nos. 47, 48.
[8] ECF No. 42 at 11.
[9] Part of Williams O&G's argument goes unconsidered. In its objections, Williams O&G argues for the first time that ambiguities or obscurities in the terms of the statute should be construed in favor of the state. ECF No. 47 at 3–4 (citing *Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929 (1935)). This is a new argument. This Court fails to see how the Magistrate's lay of the land as it was filters into and blows up its analysis today.
[10] *Wintermann v. McDonald*, 102 S.W.2d 167, 172 (Tex. 1937).

> While this act does not specifically provide that the landowner shall be authorized to execute a mineral lease as an agent of the State, as provided for under the Relinquishment Act, and as was provided for under Senate Bill 310, yet we think that this act, when construed in the light of the policy of this State relating to public lands and minerals as expressed in certain laws, if not directly, impliedly authorizes the landowner to act as the agent of the State in executing mineral leases thereon, and reserving to the State the free royalties described in section 4 thereof (Vernon's Ann.Civ.St. art. 5421c, s 4). If this act were not given this construction, all sulphur and other minerals, except oil and gas, would be controlled and subject to lease by the Commissioner of the General Land Office under article 5353 et seq., Revised Civil Statutes, and the provisions of this act. These articles of the statutes do not provide for the landowner to receive any part of the minerals. We do not think that it was the purpose of the Legislature to deprive those who acquire land under this act of all mineral rights thereunder.
>
> We think that the Legislature intended that the purchasers of land subject to sale under [the Land Sales Act] shall acquire such land and the minerals therein, but that there shall be reserved to the State one-sixteenth of all minerals as a free royalty to the State, except as to sulphur and other mineral substances from which sulphur may be derived or produced, and as to these a one-eighth thereof shall be reserved as a free royalty to the State.[11]

Williams O&G reads the above and understands that the Relinquishment Act in its entirety must be read into the Land Sales Act. While the Court understands the impulse, no court has understood that requirement and Williams O&G fails to support its novel reading with a case that even comes close.[12] *Wintermann* instead addresses a very narrow issue as to how the two Acts should harmonize on mineral conveyances, as made clear in the final paragraph cited above. Minerals, and not just land, shall convey to landowners who purchase land under the Land Sales Act with reservations to the State of one-sixteenth of all minerals as a free royalty to the State, other than sulphur and its derivations and products, which are subject to a one-eighth royalty to the State.[13] The Texas Supreme Court reaches this conclusion with not a little set up: (1) the Land Sales Act does not repeal the Relinquishment Act,[14] and "repeal of laws by implication is not favored;"[15] (2) the two Acts

---

[11] *Wintermann*, 102 S.W.2d at 172–73.
[12] *See* ECF Nos. 31 at 7–12 & 47 at 4–6.
[13] *See Wintermann*, 102 S.W.2d at 172–73.
[14] *Id.* at 172 ("It is plain that the 1931 Act is not intended to repeal the Relinquishment Act").

3

should be construed together;[15] (3) the land sold under the Land Sales Act shall be bound by the terms of that Act rather than the Relinquishment Act;[17] (4) but it would be against public policy (as recognized and embodied in the Relinquishment Act) to convey only land and leave its minerals under control of the State.[18] Nowhere does *Wintermann* require inserting the entire Relinquishment Act, along with its statutory obligations, in the Land Sales Act. Doing so hides elephants in mouseholes.[19] Because the land conveyed from the State to a landowner in 1948, the Relinquishment Act is the improper vehicle for Williams O&G to bring his concerns in Count One and Two.

As to Count Three, Williams O&G fails to engage with Texas Oil and Gas law in a meaningful way. While the objection points to policy considerations behind implied covenants,[20] Williams O&G does not cite to any case in support that would allow this Court to imply a pooling

---

[15] *Id.* at 171.
[16] *Id.* at 172 ("[The Land Sales Act] and the Relinquishment Act should be construed together.").
[17] *Id.* ("The land sold under the provisions of this act will be governed by the terms thereof, and not by the terms of the Relinquishment Act.").
[18] *Id.* at 172–73 ("While this act does not specifically provide that the landowner shall be authorized to execute a mineral lease as an agent of the State, as provided for under the Relinquishment Act, and as was provided for under Senate Bill 310, yet we think that this act, when construed in the light of the policy of this State relating to public lands and minerals as expressed in certain laws, if not directly, impliedly authorizes the landowner to act as the agent of the State in executing mineral leases thereon, and reserving to the State the free royalties described in section 4 thereof (Vernon's Ann.Civ.St. art. 5421c, s 4). If this act were not given this construction, all sulphur and other minerals, except oil and gas, would be controlled and subject to lease by the Commissioner of the General Land Office under article 5353 et seq., Revised Civil Statutes, and the provisions of this act. These articles of the statutes do not provide for the landowner to receive any part of the minerals. We do not think that it was the purpose of the Legislature to deprive those who acquire land under this act of all mineral rights thereunder.").
[19] *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001).
[20] ECF No. 47 at 7–8 (citing Keith B. Hall, *The Application of Oil & Gas Lease Implied Covenants in Shale Plays*, 32 *Energy & Min. Law Inst.* 303, 306 (2011); Kenneth M. Klemm, *Implied Covenants: Recent Developments in Failure to Develop Cases and Other Implied Obligations Under Mineral Leases*, 57 *Rocky Mt. Min. Law Inst.* 20-3 (2011); Jacqueline Weaver, *Implied Covenants*, 37 *Nat. Res. J.* 491, 529 (1997); A.W. Walker, *The Nature of Property Interests Created by an Oil and Gas Lease in Texas*, 11 Tex. L. Rev. 399, 400 (1933).

4

covenant for oil where a gas pooling provision is present.[21] Texas law requires express lease language to pool lease tracts.[22] "A lessee's authority to pool is derived solely from the terms of the lease; a lessee has no power to pool absent express authority."[23] And "there is no implied covenant when the oil and gas lease expressly covers the subject matter of an implied covenant."[24] As pointed out by the Magistrate Judge,[25] the obligation to pool arises from a duty to protect against drainage and Williams O&G has stated it does not allege drainage.[26] Williams O&G's argument that Diamondback should have drilled allocation wells[27] are new arguments and properly ignored.[28]

For the above reasons, the Court **ORDERS** that the report and recommendation of United States Magistrate Judge Griffin[29] is **ADOPTED**. Williams O&G's motion is **GRANTED IN PART** and **DENIED IN PART**. Counts One, Two, and Three are **DISMISSED WITH PREJUDICE**.[30]

It is so **ORDERED**.

---

[21] *See generally* ECF No. 47.
[22] *See, e.g., Key Operating & Equip., Inc. v. Hegar*, 435 S.W.3d 794, 798 (Tex. 2014) ("Mineral lessees of multiple tracts may pool some or all of the tracts by combining them into a single unit, provided pooling is authorized by the leases."); *Southeastern Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 170 (Tex. 1999) ("A lessee has no power to pool without the lessor's express authorization, which is usually contained in the lease's pooling clause. For pooling to be valid, it must be done in accordance with the method and purposes specified in the lease."); *Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 634 (Tex. App.—Austin 2000, pet. denied).
[23] *Browning*, 38 S.W.3d at 634.
[24] *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 373 (Tex. 2001).
[25] ECF No. 42 at 20.
[26] ECF No. 47 at 9.
[27] *Id.* at 9–11.
[28] *Firefighters' Retirement System*, 898 F.3d at 559.
[29] ECF No. 42.
[30] ECF No. 23.

SIGNED this 25th day of March 2025.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE